UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
DUNKIN' DONUTS FRANCHISED                                    :
  RESTAURANTS LLC,                                           :   **Electronically Filed**
  a Delaware Limited Liability Company,                      :
DD IP HOLDER LLC,                                            :
  a Delaware Limited Liability Company,                      :
BASKIN-ROBBINS FRANCHISED SHOPS LLC,                         :
  a Delaware Limited Liability Company,                      :
BR IP HOLDER LLC,                                            :
  a Delaware Limited Liability Company                       :
                                                             :
                        Plaintiffs,                          :
                                                             :
            v.                                               :   C.A. No. 07-CV-11274(AKH)
                                                             :
TREMONT DONUT LLC,                                           :
  a New York Limited Liability Company,                      :
                                                             :
                        Defendant.                           :
-------------------------------------------------------------x

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW CONCERNING THE COURT'S JURISDICTION IN THIS CASE**

Pursuant to the Court's Show Cause Order, Plaintiffs Dunkin' Donuts Franchised Restaurants LLC, *et al.* (collectively, "Dunkin' Donuts"), by counsel, hereby provide a supplemental brief regarding the Court's basis for jurisdiction in this case. Dunkin' Donuts filed the instant case on December 14, 2007, for breach of contract, trademark infringement, unfair competition, and trademark dilution associated with Defendant's violations of Dunkin' Donuts' standards for health, sanitation, and safety. As set forth herein, the Court has federal question and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. In support hereof, Dunkin' Donuts states as follows.

**ARGUMENT**

I.   **THE COURT HAS JURISDICTION PURSUANT TO 28 U.S.C. § 1131, FEDERAL QUESTION.**

In a business franchise, the "product" that bears the franchisor's trademarks is not only the item being purchased but the very surroundings in which they are produced, displayed and distributed. Dunkin' Donuts has based jurisdiction in part on §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(c). (Complaint ¶¶ 6, 45, 48, 51.) It is established that a licensee's failure to follow the trademark holder's quality control standards for goods and services constitutes a violation of trademark law. *See El Greco Leather Products Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986), *cert. denied*, 484 U.S. 817 (1987); *Warner-Lambert Co. v. Northside Development Corp.*, 86 F.3d 3, 6 (2d Cir. 1996). *See also C.B. Fleet Co., Inc. v. Complete Packaging Corp.*, 739 F. Supp. 393, 398-99 (N.D. Ill. 1990); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991); *Burger King Corp. v. Stephens*, No. 89-7691, 1989 U.S. Dist. LEXIS 14527 (E.D. Pa., Dec. 6, 1989). Indeed, Dunkin' Donuts has an obligation to ensure that its franchisees uphold company standards: "[i]f a trademark owner allows licensees to depart from its quality standards, the public will be misled, and the trademark will cease to have utility as an informational device." *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977).

The failure of two Burger King franchisees to follow operational standards, including those for health, sanitation, and safety, was found to provide sufficient evidence of trademark infringement to justify a preliminary injunction enjoining the franchisees from operating their restaurants until the violations were cured. *See Burger King*, No. 89-7691, 1989 U.S. Dist. LEXIS 14527, at *25. Based on inspections conducted by the franchisor, the court in *Burger*

*King* found that the franchisees had operated several stores below Burger King's operational standards. *Id.* at 14-19. The standards violations included improper food handling and employee hygiene procedures thereby increasing the risk of bacterial growth and contamination, inadequate employee training techniques, refrigerator and freezers operated at improper temperatures, and dirty food preparation equipment. These same violations were observed at Defendant's shops.

In discussing the effect of the franchisees' conduct, the court found that:

> If BKC [Burger King] is unable to control the nature and quality of the goods and services defendants provide at Burger King franchised restaurants, activities not meeting BKC standards at those restaurants could irreparably harm the goodwill associated with BKC's marks and BKC's reputation.

*Id.* at 26-27. It is widely recognized that the "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods." *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979), *cert. denied*, 447 U.S. 924 (1980).

The trademark holder's loss of control over its mark was the basis for the court of appeals affirming the district court's finding of a likelihood of success on the trademark holder's Lanham Act claim in *Shell Oil Co. v. Commercial Petroleum, Inc.* There, a Shell licensee failed to abide by Shell's quality control standards for the transportation, delivery and storage of bulk oil. *Shell Oil*, 928 F.2d at 108. The court held that a " product is not truly 'genuine' unless it is manufactured and distributed under quality controls established by the manufacturer. . . . The Lanham Act affords the trademark holder the right to control the quality of the goods manufactured and sold under its trademark." *Id.* at 107 (citations omitted). *See also* 3 McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 24:107, at 24-193 (1997) (a product not manufactured according to quality control standards "is no longer 'genuine'" and its

3

sale may be enjoined as trademark dilution).  Accordingly, the court held that the licensee's conduct provided "more than ample" evidence to show a likelihood of confusion in violation of the Lanham Act.  *Shell Oil*, 928 F.2d at 108.

In *Warner-Lambert*, the manufacturer of cough drops brought a trademark infringement action against a licensee for selling cough drops that did not comply with Warner-Lambert's quality control standards for freshness.  86 F.3d at 5.  In holding that a preliminary injunction was warranted, the court of appeals reasoned that:

> [d]istribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image.  If so, the non-conforming product is deemed for Lanham Act purposes not to be the genuine product of the holder, and its distribution constitutes trademark infringement.

*Id.* at 6.

In *C.B. Fleet*, the Court held that a trademark owner (Fleet) was likely to succeed on its trademark infringement claim against a manufacturer of a feminine product that was attempting to sell the product even though it did not follow Fleet's quality control procedures.  739 F. Supp. at 398-99.

Similarly, Defendant's attempt to sell products under conditions that do not meet Dunkin' Donuts' standards for health, sanitation, and safety constitutes trademark infringement and dilution, as well as unfair competition pursuant to the Lanham Act.  *See, e.g., Dunkin' Donuts Inc. v. Kashi Enters., Inc.*, 106 F. Supp. 2d 1325, 1327 (N.D. Ga. 2000) ("No[t] only does the defendant's conduct place the plaintiff's trademarks and trade name at risk, but more importantly, it puts the public in danger of food contamination"); *Dunkin' Donuts Inc. v. Albireh Donuts, Inc.*, 96 F. Supp. 2d 146, 149 (N.D.N.Y. 2000) ("[T]he serving of inferior, non-conforming products under [Dunkin' Donuts'] name could have a detrimental impact on

[Dunkin' Donuts'] name and goodwill, devalue [Dunkin' Donuts'] trademark, and subject [Dunkin' Donuts] to a loss of business and exposure to substantial tort liability"); *Baskin-Robbins Inc. v. A. Ender, Ltd.,* No. CV-N-99-206-ECR, 1999 WL 1318498, at *3 (D. Nev. Sept. 10, 1999) ("The potential of infection of customers because of e-coli or other dangerous ailments . . . from unsanitary conditions at the store is considerable.  If such were to occur, certainly the reputation, goodwill and business of Baskin-Robbins at large in the country would be harmed.  This constitutes irreparable injury").[1]  When unhealthy conditions exist at Defendant's shop, the products and services being offered are not genuine Dunkin' Donuts products and services.  As a result, Dunkin' Donuts is unable to control the nature and quality of the goods and services sold under its trademarks.  Accordingly, the Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, which provides the Court for jurisdiction on matters of federal question arising under the "Constitution, laws, or treaties of the United States."

**II.    THE COURT ALSO HAS DIVERSITY JURISDICTION.**

Dunkin' Donuts has also asserted jurisdiction under 28 U.S.C. § 1332.  (Complaint ¶ 6.)  For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of the state in which it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  As noted in the Complaint, Plaintiffs are all Delaware limited liability companies with their principal place of business located in Canton, Massachusetts.  (Complaint ¶ 1-4.)  Defendant is a New York limited liability company with its principal place of business located in the Bronx, New York.  (*Id.* ¶ 5.)  Thus, the Plaintiffs and Defendant are citizens of different states.

Similarly, the amount in controversy requirement is satisfied herein.  The value of the

---

[1] Baskin-Robbins is a sister company of Dunkin' Donuts.

litigation at issue in this case is measured by the value of Dunkin' Donuts' business or the goodwill of its trademarks, which more than satisfies the amount in controversy requirement. In actions for injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation. *See Hunt v. Washington State Apple Advertising Com.*, 432 U.S. 333 (1977). In suits involving trademarks, the value of the amount in controversy is determined by the value of the business or the goodwill of the trademarks. *See, e.g.*, *Littlefuse, Inc. v. Parker-Hannifin Corp.*, No. 85 C 7490, 1986 U.S. Dist. LEXIS 25441, at *19 (N.D. Ill., May 19, 1986); *Schering Corp. v. Sun Ray Drug Co.,* 320 F.2d 72, 75-76 (3d Cir. 1963); *Hanson v. Triangle Publications, Inc.*, 163 F.2d 74, 79 (8th Cir. 1947), *cert. denied,* 332 U.S. 855 (1948); *Marion Lab., Inc. v. Michigan Pharmacal Corp.*, 338 F. Supp. 762, 764 (E.D. Mich. 1972); *Coca-Cola Co. v. Foods, Inc.*, 220 F. Supp. 101, 105 (D.S.D. 1963). *See also* 3 McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 32:34 (1997). In measuring the value of the goodwill which a plaintiff seeks to protect by injunction, the courts will look to the amount of advertising expenses and the volume of business. *See Schering, supra; Hanson, supra; Marion Lab., supra; Coca-Cola, supra*.

     Dunkin' Donuts has no difficulty in meeting the amount in controversy requirement. Dunkin' Donuts and its franchisees have expended approximately $1,500,000,000 in advertising and promoting the Dunkin' Donuts marks over the last thirty-six years. (Certification of Jack Laudermilk ¶ 7) (attached as Exhibit 1 to Dunkin' Donuts' Memorandum of Law in Support of its Motion for Preliminary Injunction.) Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005 alone on advertising and promotion. (*Id.*) Moreover, Dunkin' Donuts and its franchisees currently operate over 5,600 shops in the United States and over 2,000 shops outside

of the United States.  (*Id.* ¶ 8.)  Given these facts, the value to Dunkin' Donuts of the goodwill inherent in its trademarks is well in excess of $75,000.

Further, Dunkin' Donuts' goodwill is directly threatened when a franchisee fails to operate its shop according to Dunkin' Donuts' standards.  *See, e.g., Dunkin' Donuts Inc. v. Kashi Enters., Inc.*, 106 F. Supp. 2d at 1327; *Dunkin' Donuts Inc. v. Albireh Donuts, Inc.*, 96 F. Supp. 2d at 149; *Baskin-Robbins Inc. v. A. Ender, Ltd.,* 1999 WL at *3.  Past examples of standards violations have gained regional and even national television exposure.  (Laudermilk Cert. ¶ 10.) For example, in the fall of 1995, the nationally broadcast television program *Prime Time Live* did an exposé on standards violations in quick service restaurants.  (*Id.* ¶ 11.)  Employees at two Dunkin' Donuts franchises with poor standards were shown on the hidden camera displaying improper hygiene and food preparation techniques.  (*Id.*)  Likewise, WWOR in New Jersey did a television exposé on a Dunkin' Donuts, accusing it of numerous standards violations.  (*Id.*)  The type of negative publicity suffered as a result of these incidents endangers Dunkin' Donuts' name, reputation, and goodwill.  (*Id.*)

*       *       *

In sum, federal question jurisdiction exists because Defendant's failure to follow operational standards constitutes violations of trademark law.  Moreover, diversity jurisdiction exists because the object of the litigation is the goodwill inherent in Dunkin' Donuts' trademarks, the value of which is well in excess of the jurisdictional requirement.

Respectfully submitted,

/s/ Ronald D. Degen
Ronald D. Degen (RD 7808)
Scott Goldfinger (SC 9219)
O'ROURKE & DEGEN, PLLC
225 Broadway, Suite 715
New York, NY 10007
Telephone: (212) 227-4530
Facsimile: (212) 385-9813

Robert L. Zisk (RZ 1275)
David E. Worthen (DW 8519)
Iris Figueroa Rosario (IR 7902)
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone:    (202) 295-2200
Facsimile:    (202) 295-2250

Dated:  December 19, 2007             *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2007, a copy of the foregoing

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW CONCERNING THE COURT'S JURISDICTION IN THIS CASE** was served by Federal Express to the following:

> Tremont Donut LLC
> c/o Arjan Daswani, Managing Member
> 2702 East Tremont Avenue
> Bronx, New York 10461

and by U.S. Express Mail to the following:

> Tremont Donut LLC
> c/o Arjan Daswani, Managing Member
> P.O. Box 1097
> Englewood Cliff, New Jersey 07632

/s/ Ronald D. Degen_____
Ronald D. Degen (RD 7808)